228-07/WLJ/MAM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
ESSAR INTERNATIONAL LIMITED,

Plaintiff,

-against-

MARTRADE GULF LOGISTICS FZCO,

Defendant.
-----------------------------------------------------x

07 Civ. 3439 (WHP)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION BY MARLOG-LBG LOGISTICS GmbH TO VACATE THE ATTACHMENT**

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
ESSAR INTERNATIONAL LIMITED
80 Pine Street
New York, NY 10005
Tel: (212) 425-1900 / Fax: (212) 425-1901

Of Counsel:
William L. Juska (WJ 0772)
Manuel A. Molina (MM 1017)

NYDOCS1/286220.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.....ii

PRELIMINARY STATEMENT.....1

ARGUMENT

**POINT I**

ESSAR HAS MET ITS BURDEN TO SHOW WHY THE ATTACHMENT SHOULD BE MAINTAINED.....2

**POINT II**

THE ATTACHMENT SHOULD BE MAINTAINED BECAUSE MARLOG WAS TRANSFERRING FUNDS ON BEHALF AND FOR THE BENEFIT OF MARTRADE.....4

**POINT III**

ESSAR SHOULD BE PERMITTED TO TAKE LIMITED DISCOVERY CONCERNING THE BUSINESS RELATIONSHIP AMONG MARTRADE, MARLOG AND INCHAPE IN RESPECT OF VOYAGE 7807 OF THE MOTOR VESSEL GRAND GLORY..... 10

CONCLUSION.....11

**Cases**

*Aqua Stoli Shipping Ltd. v. Gardner Smith PTY*, 460 F.3d 434 (2d Cir. 2006)............................ 3

*Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*,
341 F.2d 50 (2d Cir. 1965)........................................................................................ 4

*Cowles v. Kinzler*, 225 F. Supp. 63 (W.D.Pa. 1963) ................................................................ 4

*DS Bulk Pte. Ltd. v. Calder Seacarrier Corp.*, No. 05-10146,
2006 U.S. Dist. LEXIS 39242 (S.D.N.Y. June 13, 2006)...................................................... 8, 9

*Florida Conference Association of Seventh-Day Adventists v. Kyriakides*,
151 F.Supp.2d 1223 (C.D.CA. 2001) ........................................................................... 4

*International Ocean Way Corp. of Monrovia v. Hyde Park Navigation, Ltd.*,
555 F. Supp. 1047 (S.D.N.Y. 1983)............................................................................ 7

*Iran Express Lines v. Sumatrop, AG*, 563 F.2d 648 (4th Cir. 1977)......................................... 4

*Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.*,
169 F.Supp.2d 1341 (M.D.Fl. 2001)............................................................................ 2, 4, 5

*Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307 (2d Cir. 1970) ......................................... 10

*Oil Transport Co., S.A. v. Hilton Oil Transport*,
1994 A.M.C. 2817 (S.D.Tx. July 25, 1994)........................................................................ 5

*Rolls Royce Ind. Power (India) v. M.V. FRATZIS M*,
1996 A.M.C. 390 (S.D.N.Y. 1995)............................................................................ 10

*Salazar v. The Atlantic Sun*, 881 F.2d 73 (3d Cir. 1989)........................................................ 2

*T&O Shipping, Ltd. v. Source Link Co., Ltd.*, No. 06-7724,
2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. Dec. 6, 2006) ..................................................... 8, 9

*Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 743 F.2d 956 (1st Cir. 1984)................................. 5

*Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, No. 05-7955,
2006 U.S. Dist. LEXIS 77033 (S.D.N.Y. Oct. 23, 2006) ..................................................... 2, 3

*Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002).......................................... 3, 4

Plaintiff, ESSAR INTERNATIONAL LIMITED ("Essar"), by and through its counsel, Freehill Hogan & Mahar, LLP, hereby submits this memorandum of law in opposition to the motion of MARLOG-LBG LOGISTICS GMBH ("Marlog") to vacate certain attachments.

**PRELIMINARY STATEMENT**

For a full exposition of the facts underlying the parties' dispute, Essar respectfully draws this Court's attention to the Affidavit of William L. Juska, dated July 5, 2007 ("Juska Aff.").

Marlog has moved this Court to vacate the attachment of $157,000, restrained by Deutsche Bank pursuant to this Court's May 1, 2007 order, on the ground that those funds are its "property," not Defendant Martrade's. In so arguing, Marlog misstates the issue for this Court. The dispositive issue is not whether the attached funds were Marlog's "property," but rather, whether, given the Second Circuit's expansive interpretation of the term "property" that is suitable to attachment within the ambit of Rule B, Martrade has a sufficient interest in the property that has been attached.

In this regard, it is noteworthy that Marlog has intentionally failed to apprise the Court of an important fact which establishes that the challenged assets were indeed being transferred by Marlog on behalf and for the benefit of Defendant Martrade. This fact undercuts Marlog's basic contention that the attachment should be vacated because the $157,000 restrained by Deutsche Bank are Marlog's "property."

The dispositive fact omitted by Marlog in its motion is that the challenged funds were restrained precisely because Marlog was making a payment to Inchchape Shipping Services ("Inchcape") for the benefit of Defendant Martrade. As Exhibit 3 to the Juska Affidavit demonstrates, the wire transfer instructions sent by Marlog had the following notation: "Grand Glory V 7807 ***for Martrade Gulf Logistics***." (emphasis supplied). That notation refers to

"Voyage 7807 of the vessel GRAND GLORY." (Juska Aff., ¶16). It is unmistakably clear from the instructions provided by Marlog itself that it was directing its bank to remit funds whose sole purpose was to cancel a debt incurred by Martrade, its affiliate, to Inchcape concerning Voyage 7807 of the vessel GRAND GLORY. Accordingly, it is respectfully submitted that the attachment was proper and should be maintained by this Court.

## ARGUMENT

## POINT I

## ESSAR HAS MET ITS BURDEN TO SHOW WHY THE ATTACHMENT SHOULD BE MAINTAINED

It is common ground that, at an E(4)(f) hearing, the burden is on the plaintiff to demonstrate why the attachment should not be vacated. Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends upon the issues in controversy. *Salazar v. The Atlantic Sun*, 881 F.2d 73, 79 (3d Cir. 1989); *Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A.*, 169 F.Supp.2d 1341, 1357-59 (M.D.FL. 2001) ("Rule E does not restrict review [at the post attachment hearing] to the adequacy of the allegations in the complaint, nor does it echo the standards of the initial attachment that conditions appear to exist; rather Rule E requires plaintiff…to show why the attachment should not be vacated"). The standard generally is that "the plaintiff must demonstrate that 'reasonable grounds' exist for the attachment." *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 05-7955, 2006 U.S. Dist. LEXIS 77033, *7-8 (S.D.N.Y. Oct. 23, 2006) (citation omitted). The case law of this Circuit, however, is clear that the burden of proof at this stage of the proceedings does not require the plaintiff to demonstrate its case with the same level of proof as required at trial. *Wajilam Exports*, 2006 U.S. Dist. LEXIS 77033, *9.

Instead, to sustain its burden on a motion to vacate, plaintiff only needs to demonstrate the three items required under Rule E(4)(f): 1) that the cause of action arises within the Court's admiralty jurisdiction; 2) the defendant cannot be found within the district; and 3) the defendant has property within the district that has been restrained. *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002) and *Aqua Stoli Shipping Ltd. v. Gardner Smith PTY*, 460 F.3d 434 (2d Cir. 2006).

Significantly, it is clear that the concept of property within the purview of Rule B is of expansive scope. *Winter Storm*, 310 F.3d at 276 (property suitable to attachment under Rule B is "tangible and intangible" and includes debts owed to defendant, even those that have not yet fully matured so long as defendant's entitlement to the credit or interest in the debt is clear). Here, Marlog's sole challenge to the attachment is the self-serving statement that the restrained assets were its property, and that Martrade therefore has no interest in the attached funds. As more fully set forth in Point II hereinbelow, Marlog's position is without merit, as the limited evidence demonstrates that Marlog was satisfying a debt owed by Martrade to Inchcape in connection with Voyage 7807 of the M/V GRAND GLORY. Marlog's utter silence concerning the facts surrounding the underlying transaction among Martrade, Marlog and Inchcape is revelatory and demonstrates the propriety of the attachment.

Essar respectfully submits that it has satisfied all the technical requirements mandated by Rule B and demonstrated that reasonable grounds exist for the attachment. Accordingly, the attachment is valid and should be maintained.

## POINT II

## THE ATTACHMENT SHOULD BE MAINTAINED BECAUSE MARLOG WAS TRANSFERRING FUNDS ON BEHALF AND FOR THE BENEFIT OF MARTRADE

In Winter Storm, the Second Circuit emphatically acknowledged that the concept of property for purposes of Rule B was broad. Judge Haight stated:

> Initially examining admiralty law, as we must, we encounter Rule B(1) itself, which provides that a maritime plaintiff may "attach the defendant's tangible or intangible personal property." ***It is difficult to imagine words more broadly inclusive than "tangible or intangible." What manner of thing can be neither tangible nor intangible and yet still be "property?"*** The phrase is the secular equivalent of the creed's reference to the maker "of all there is, seen and unseen."

310 F.3d at 276 (emphasis supplied). Courts both in the Second Circuit and nationwide, in interpreting the scope of attachable property under Rule B, have invariably found that if the defendant has any form of a recognizable interest in almost any type of property, it is attachable under the Rule. This includes any goods, chattels, credits, or effects of the defendant (*Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50 (2d Cir. 1965)), as well as intangible items, such as debts, even if they have not yet matured or have only partially matured (*Iran Express Lines v. Sumatrop, AG*, 563 F.2d 648 (4th Cir. 1977); *Cowles v. Kinzler*, 225 F. Supp. 63 (W.D.Pa. 1963)).

Courts have also regularly found that due to the broad language of Rule B, restrictions such as title or ownership do not control the scope of the attachment of property under the Rule. Instead, any manner of interest in property is sufficient to permit restraint under Rule B. *See, e.g., Florida Conference Association of Seventh-Day Adventists v. Kyriakides*, 151 F.Supp.2d 1223 (C.D.CA. 2001) (approving the attachment of part of a promissory note, despite the fact that the debt was not due or payable at the time, because the promissory note evidenced a debt which was "tangible or intangible property" under Rule B); *Linea Naviera de Cabotaje*, 169 F.

Supp.2d at 1359 (sustaining the attachment of the bank accounts of two companies arguably related to the defendants, on the basis that there were reasonable grounds to believe that the bank accounts were controlled by the defendant); *Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 743 F.2d 956 (1st Cir. 1984) (affirming the maintenance of an attachment of a debt owed by a third party in Puerto Rico to the defendant); *Oil Transport Co., S.A. v. Hilton Oil Transport*, 1994 A.M.C. 2817 (S.D.Tx. July 25, 1994) (permitting attachment of arbitration award rendered in New York in favor of defendant).

In recognition of the Second Circuit's expansive interpretation of the term "property" under Rule B, this Court directed the issuance of Process of Maritime Attachment and Garnishment against the property of the Defendant Martrade as follows:

> **O R D E R E D** that the Clerk of this Court is directed forthwith to issue the Process of Maritime Attachment and Garnishment for ***seizure of all tangible and intangible property of the Defendant***, as described therein, including but not limited to any property of the Defendant such as any cash, funds, escrow funds, debts, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or ***being transferred*** to, from, or ***for the benefit of the Defendant***, (collectively, "ASSETS"), ***including but not limited to such ASSETS as may be held, received or transferred for its benefit*** at, through, or within the possession, custody or control of banking institutions, and/or other garnishee(s) on whom a copy of the Process of Maritime Attachment and Garnishment may be served, in the amount of **$1,327,249.78** pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure in respect to the claim against the Defendants. (Juska Aff., Ex. 1) (emphasis supplied).

Similarly, the Process of Maritime Attachment and Garnishment issued by the Clerk provided, in pertinent part, for the restraint of "***assets*** of, belonging to, due or being transferred to, from, ***or for the benefit of Defendant*** **MARTRADE GULF LOGISTICS FZCO** (collectively hereinafter, "ASSETS"), ***including but not limited to such ASSETS*** as may be held, received, or transferred in its own name or as may be held, received or ***transferred for its benefit*** . . . ." (Juska Aff., Ex. 2) (emphasis supplied).

Here, Deutsche Bank restrained the subject $157,000 precisely because Marlog indicated in its wire transfer instructions that the funds were being remitted to Inchcape for "Grand Glory V 7807 ***for Martrade Gulf Logistics***." (Juska Aff., Ex. 3). The logical import of Marlog's instructions is that the attached funds were being *specifically* remitted to satisfy a financial obligation owed by Martrade to Inchcape in connection with Voyage 7807 of the vessel GRAND GLORY, and thus the funds were being transferred on behalf and for the benefit of "Martrade Gulf Logistics." Inchcape "is the world's leading marine services provider" offering full agency service to charterers of vessels such as Defendant Martrade. (See www.iss-shipping.com).

Remarkably, the declaration of Mr. Kurt Maasen sheds no light on the transaction underlying the remittance of funds by Marlog, "for Martrade," to Inchcape. Conspicuously absent from Mr. Maasen's declaration is any statement explaining why Marlog, Martrade's affiliate, was remitting funds, "for Martrade," with respect to a financial obligation that Martrade had incurred with Inchcape vis-à-vis Voyage 7807 of the M/V GRAND GLORY. This silence is deafening especially in light of Mr. Maasen's claim that Martrade and Marlog are separate and distinct corporations.[1] At best, the challenged transaction demonstrates that Marlog is paying a debt it owes to Martrade by satisfying, in turn, the debt Martrade owes to Inchcape; at worst, it suggests that Martrade has directed its affiliate to pay, on its behalf and for its benefit, the debt Martrade owes to Inchchape in order to circumvent the order and writ of maritime attachment that Essar has obtained from this Court. The sequence of attachments in this case strongly suggests the latter scenario. Following the service of the order and writ of attachment upon various New York financial institutions, Deutsche Bank advised on May 7, 2007 that it had

---

1 Essar's counsel requested Marlog's counsel to provide documentation and communications among Marlog, Martrade and Inchcape concerning the challenged remittance. (Juska Aff., ¶14). To date no documentation has been furnished. This failure to produce evidence that would demonstrate Marlog's position tacitly supports Essar's argument that Martrade does have a proprietary interest in the attached funds.

restrained $220,816.84 in the form of an electronic funds transfer originated by Martrade. (Juska Aff., ¶10). On the same day, American Express Bank also advised that it had restrained $400,000 in the form of an electronic funds transfer originated by Martrade. (Juska Aff., ¶10). Essar, on the same day, provided Martrade with Notice of Attachment pursuant to Local Rule B.2. Thus, in the face of Marlog's deliberate silence concerning the challenged transaction, the inescapable inference is that in remitting funds "for Martrade," approximately a month after the initial attachments were made and Martrade was given notice of those attachments, Marlog was assisting its affiliate to circumvent this Court's order.

As Marlog's own wiring instructions establish that Martrade has a sufficient proprietary interest in the attached funds, Marlog obfuscates the issue before this Court. Marlog maintains that because the restrained assets are its "property," Essar can only attach those funds only if Marlog is itself a defendant or if Essar has alleged that Marlog is Martrade's alter ego. This argument is without merit.

There is no requirement that Essar either bring a suit against Marlog naming it as a defendant, or demonstrate that Marlog and Martrade are alter egos for Essar to be able to attach Marlog's "property." *See International Ocean Way Corp. of Monrovia v. Hyde Park Navigation, Ltd.*, 555 F. Supp. 1047 (S.D.N.Y. 1983). There, the defendant's subcharterer placed funds in a bank escrow account "for the benefit" of the defendant, which escrow account served as security for the claim defendant had brought against subcharterer in London arbitration proceedings. Subsequently, plaintiff attached the escrow account pursuant to a Rule B attachment order it had obtained against the defendant. In confirming the validity of the attachment, Judge Weinfeld ruled that "the escrow account is tangible personalty deposited ***for the benefit of defendant***, subject only to the arbitrator's finding regarding the exact amount owed to defendant by its

subcharterer." 555 F. Supp. at 1048 (emphasis supplied). Clearly, the funds in the escrow account were subcharterer's property, not the defendant's. If the London arbitrator ultimately determined that subcharterer had no liability to defendant, the escrowed funds would revert to the subcharterer. The dispositive fact, however, was that the funds were escrowed specifically for defendant's benefit, *i.e*, the defendant had the necessary proprietary interest in the escrowed funds.

Marlog's reliance upon *T&O Shipping, Ltd. v. Source Link Co., Ltd.*, No. 06-7724, 2006 U.S. Dist. LEXIS 88153 (S.D.N.Y. Dec. 6, 2006) and *DS Bulk Pte. Ltd. v. Calder Seacarrier Corp.*, No. 05-10146, 2006 U.S. Dist. LEXIS 39242 (S.D.N.Y. June 13, 2006) is misplaced. In *T&O Shipping*, plaintiff attached the property of a non-party, which property had no connection whatsoever with the defendant. To defend the attachment, plaintiff conclusorily argued that the defendant had an "interest" in the non-party's restrained funds even though there was no evidence that the attached funds were being transferred for the benefit of the defendant. 2006 U.S. Dist. LEXIS 88153, *14. In fact, the bank's counsel indicated to plaintiff's counsel that the wire remittance details did not have any connection with the defendant. 2006 U.S. Dist. LEXIS 88153, *14. In light of these facts, Judge Karas remarked that plaintiff had exceeded the scope of the attachment: "although the Attachment named only Source Link – a fact not lost upon the Bank's lawyer who brought this to Plaintiff's attention – Plaintiff, perhaps realizing its error, instructed the Bank to restrain Source Link Shipping's funds." 2006 U.S. Dist. LEXIS 88153, *18-19.

The facts of this case bear no resemblance whatsoever to those of *T&O Shipping*. Here, it is beyond dispute that the reason Deutsche Bank restrained the subject $157,000 was precisely because Marlog's own wire transfer instructions specifically referenced Defendant "Martrade

Gulf Logistics." Hence, Martrade had the necessary proprietary interest in those funds because it is clear that they were meant to satisfy the debt Martrade owed to Inchcape. Simply stated, as the evidence demonstrates (Juska Aff., Ex. 3), had Marlog made the remittance without the notation "for Martrade Gulf Logistics," the $157,000 would not have been seized by Deutsche Bank. That notation, however, only confirms the fact that the challenged transfer was being made on behalf and for the benefit of Defendant Martrade. Accordingly, the challenged funds were Martrade's property within the ambit of Rule B.

For similar reasons, the *DS Bulk* case is factually inapposite. There, as in *T&O Shipping*, the plaintiff conclusorily stated that the attached non-party's property was the defendant's property. Accordingly Judge Stein, in vacating the attachment stated, that a non-party's property may not be attached "on the bare assertion that his property in fact belongs to a party in the action." 2006 U.S. Dist. LEXIS 39242, *7. Here, Marlog's own wire transfer instructions and silence concerning the relationship among Martrade, Marlog and Inchchape with respect to the underlying transaction belie its self-serving claim that Martrade has no interest in the attached funds.

Accordingly, Essar respectfully submits that, as Defendant Martrade possesses the necessary proprietary interest in the challenged $157,000, the attachment is proper and should be maintained. Marlog's motion to vacate should therefore be denied in all respects.

## POINT III

## ESSAR SHOULD BE PERMITED TO TAKE LIMTED DISCOVERY CONCERNING THE BUSINESS RELATIONSHIP AMONG MARTRADE. MARLOG AND INCHCAPE IN RESPECT OF VOYAGE 7807 OF THE MOTOR VESSEL GRAND GLORY

Essar respectfully requests that in the event the Court opts to entertain an argument that Martrade has no property interest in the attached assets, Essar should be permitted to conduct specific and limited discovery regarding the commercial dealings among Martrade, Marlog and Inchcape in connection with Voyage 7807 of the M/V GRAND GLORY. *See Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307, 322 (2d Cir. 1970) (discovery permitted in respect to allegation that assets owned by one corporation should in fact be considered an asset of a related corporation); *Rolls Royce Ind. Power (India) v. M.V. FRATZIS M*, 1996 A.M.C. 390, 392 (S.D.N.Y. 1995) (Haight, J.) (discovery allowed on motion to vacate attachment to determine whether attachment reached assets of the named defendant).

This argument is all the more compelling here, as it is clear from the wire transfer instructions provided by Marlog that the restrained assets constituted a payment made by Marlog, on behalf and for the benefit of Martrade, admittedly Martrade's affiliate, to cancel a financial obligation owed by Martrade to Inchcape. Essar respectfully submits that it should be entitled to conduct limited discovery on this specific transaction.

## CONCLUSION

For all the foregoing reasons, Essar International Limited respectfully requests that this Court deny Marlog-LBG Logistics GmbH's motion, direct that the challenged attachment remain in place, and award such other and further relief as the Court may deem just and proper.

Dated: New York, New York
July 5, 2007

FREEHILL, HOGAN & MAHAR LLP
Attorneys for Plaintiff
ESSAR INTERNATIONAL LIMITED

By: ______________________________
William L. Juska (WJ 0772)
Manuel A. Molina (MM 1017)
80 Pine Street
New York, New York 10005
(212) 425-1900

TO: HILL RIVKINS & HAYDEN LLP
Attorneys for
MARLOG-LBG LOGISTICS GmbH

45 Broadway, Suite 1500
New York, N.Y. 10006
(212) 669-0600

Attn: Keith B. Dalen, Esq,