228-07/WLJ
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
ESSAR INTERNATIONAL LIMITED
80 Pine Street
New York, NY 10005
Telephone:(212) 425-1900
Facsimile:(212) 425-1901
William L. Juska (WJ 0772)

**AFFIDAVIT OF
WILLIAM L. JUSKA, JR.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 Civ. 3439 (WHP)

------------------------------------------------------------x
ESSAR INTERNATIONAL LIMITED,

                      Plaintiff,

  -against-

MARTRADE GULF LOGISTICS FZCO,

                      Defendant.
------------------------------------------------------------x

State of New York   )
                         ) ss.:
County of New York )

      WILLIAM L. JUSKA, JR., being duly sworn, deposes and says as follows:

      1.    I am a partner with the law firm of Freehill Hogan Mahar LLP, attorneys for plaintiff Essar International Limited ("ESSAR").

      2.    This Affidavit is submitted in opposition to the Motion of Marlog-LBG Logistics GmbH ("MARLOG") to vacate a certain attachment of $157,000 restrained by Deutsche Bank pursuant to the Process of Maritime Attachment and Garnishment issued in this action.

NYDOCS1/286184.1

3. This action involves a claim for breach of a charter party between the plaintiff ESSAR and Martrade Gulf Logistics FZCO ("MARTRADE") and was initiated with the filing of a Summons and Complaint by plaintiff ESSAR, seeking security in aid of London arbitration, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4. As outlined in the Verified Complaint, MARTRADE chartered the vessel M/V LINDOS from ESSAR under a charter party dated June 29, 2006 and failed to redeliver the vessel to ESSAR on or about April 24, 2007 as required by the Charter Party.

5. As set forth in the Verified Complaint, plaintiff ESSAR alleges that MARTRADE's breach in failing to redeliver the M/V LINDOS on April 24, 2007 has caused ESSAR to sustain damages in the sum of $919,063.33.

6. Plaintiff ESSAR also claims additional breaches of the charter party by MARTRADE in the nature of unjustified deductions from hire, totaling $112,851.35.

7. For the aforementioned amounts, plus interest, attorneys' fees and costs to be incurred in the London arbitration, pursuant to the terms of the charter party, plaintiff ESSAR sought in its Verified Complaint security in the total amount of $1,327,249.78.

8. As requested in the Verified Complaint, on May 1, 2007 the Court issued an Order Directing Clerk To Issue Process of Maritime Attachment and Garnishment. The Order directed the Clerk to:

> "... issue the Process of Maritime Attachment and Garnishment for seizure of all tangible and intangible property of the Defendant, as described therein, including but not limited to any property of the Defendants such as ... electronic funds transfers ... belonging to, due or being transferred to, from or for the benefit of the Defendant (collectively "ASSETS") including but not limited to such ASSETS as may be held, received or transferred for its benefit at, through or within the possession, custody or control of banking institutions and/or other garnishee(s) on whom a copy of the Process of Maritime Attachment and Garnishment may be served...."

A copy of the Order is attached as Exhibit 1.

9.   On May 2, 2007 the Clerk of the Court issued a Process of Maritime Attachment and Garnishment calling for the attachment of various assets, including electronic funds transfers, "... belonging to, due or being transferred to, from or for the benefit of defendant MARTRADE GULF LOGISTICS FZCO (collectively hereinafter, "ASSETS") including but not limited to such ASSETS as may be held, received or transferred in its own name or as maybe held, received or transferred for its benefit at, through or within the possession, custody or control ..." of various garnishee banks. A copy of the Process of Maritime Attachment and Garnishment is attached hereto as Exhibit 2.

10.  On May 7, 2007 Deutsche Bank advised that they had identified and restrained $220,816.84 in the form of an electronic funds transfer originated by MARTRADE. On that same date, American Express Bank advised that they had identified and restrained $400,000 in the form of an electronic funds transfer originated by MARTRADE. On May 7, 2007 our office sent Martrade notice of the two attachments, pursuant to Local Rule B.2.

11. On June 1, 2007 I was contacted by Mr. John Nidhiry of Deutsche Bank who advised that Deutsche Bank had identified and restrained $157,000 in the form of an electronic funds transfer originated by MARLOG and being remitted to Inchape Shipping Services as beneficiary. Deutsche Bank advised that they restrained the remittance because the Swift confirmation contained the description: "Grand Glory V7807 for Martrade Gulf Logistics." Deutsche Bank asked if we wished these funds restrained and I advised that I would review the file and revert.

12. I reviewed the file and the terms of the Process of Maritime Attachment and Garnishment. I then called Mr. Nidhiry of Deutsche Bank and requested a copy of the Swift confirmation. He advised that he could not release that confirmation as a matter of bank policy. I then asked Mr. Nidhiry to once again read the description of the transaction from the Swift confirmation and he again read: "Grand Glory V7807 for Martrade Gulf Logistic." I commented to Mr. Nidhiry that from the description of the transaction on the Swift confirmation it appeared that money was being paid by MARLOG on behalf of or for the benefit of MARTRADE in relation to the vessel GRAND GLORY, which in turn appeared to constitute an asset within the description contained in the Process of Maritime Attachment and Garnishment. Mr. Nidhiry advised that he would restrain the $157,000.

13. On June 29, 2007 I was contacted by Mr. Keith Dalen of Hill Rivkins & Hayden LLP who advised that he had been retained by MARLOG and would be filing a Motion to Vacate the attachment of the $157,000 restrained by Deutsche Bank. I asked Mr. Dalen if he

could provide a copy of the Swift Confirmation for the remittance in question and he indicated that he would pass that request on to MARLOG.

14. We were served with MARLOG's Order to Show Cause by telefax at 4:07 p.m. on June 29, 2007. Having reviewed the Motion papers on Monday, July 2nd, I emailed Mr. Dalen and asked if he could advise whether or not the remittance of $157,000 from MARLOG to Inchape Shipping Services was made on behalf of or for the benefit of MARTRADE, in respect of amounts owed by MARTRADE to Inchape Shipping Services in relation to the vessel GRAND GLORY. If the answer to the question was in the affirmative, I asked that Mr. Dalen supply copies of all documentation and communications between MARLOG, MARTRADE and Inchape Shipping Services relating to the remittance. If the answer to the question was in the negative, I asked Mr. Dalen to supply a copy of the invoice or other documentation from Inchape Shipping Services upon which the remittance from MARLOG was based. Once again, Mr. Dalen advised that the requests had been passed on to MARLOG. To date, neither the Swift confirmation nor any other information or documentation has been received from MARLOG with respect to the remittance in question.

15. On July 2, 2007 I again contacted Deutsche Bank, speaking to Ms. Yvonne Falconer in the absence of Mr. John Nidhiry. Ms. Falconer reiterated Mr. Nidhiry's prior advices that it was against bank policy to release Swift confirmations. However, she agreed to provide a letter describing the $157,000 restrained and setting forth the descriptive language from the Swift confirmation. Attached as Exhibit 3 is a telefax from Deutsche Bank dated July

2, 2007 describing the $157,000 identified and restrained, and quoting the following description from the remittance information: "Grand Glory V7807 for Martrade Gulf Logistics."

16. Based on my 39 years of experience as a maritime attorney, I submit that the phrase "Grand Glory V7807" refers to voyage number 7807 of the vessel Grand Glory.

_____
William L. Juska, Jr. (WJ 0772)

Sworn to before me this
5th day of July, 2007

_____
Notary Public

JOAN SORRENTINO
Notary Public, State of New York
No. 01SO6067227
Qualified in New York County
Commission Expires December 3, 2009