UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ESSAR INTERNATIONAL LIMITED,            07 Civ. 3439 (WHP)

        Plaintiff,

  - against –

MARTRADE GULF LOGISTICS FZCO,

        Defendant.
--------------------------------------------------------X


# REPLY MEMORANDUM OF LAW IN SUPPORT OF MARLOG-LBG LOGISTICS GMBH'S MOTION TO VACATE RULE B MARITIME ATTACHMENT BY WAY OF ORDER TO SHOW CAUSE


**OF COUNSEL:**

Keith B. Dalen
Christopher M. Panagos
Andrew R. Brown

## INTRODUCTION

Non-party Marlog-LBG Logistics GmbH ("Marlog") respectfully submits this reply memorandum in support of its motion to vacate the wrongful attachment of its funds by plaintiff Essar International Limited ("Essar") in the possession of garnishee Deutsche Bank.

## PRELIMINARY STATEMENT

Plaintiff seeks to maintain the attachment based upon hindsight and multiple implications. However, Plaintiff cites no case, and absolutely no authority, which would support its argument under the circumstances. Each case relied upon by Essar is irrelevant to the narrow issue or is factually inapposite. Marlog submits that the case *T&O Shipping, Ltd. v. Source Link Co., Ltd.*, 2006 WL 3513638 (S.D.N.Y. 2006) (Karas, J.) is on all fours analogous to the situation presently before the Court. In that case, the identical arguments proffered by Essar herein were raised and rejected by Judge Karas.

Essar has wrongfully attached an electronic fund transfer ("EFT") initiated by and from the account of Marlog to and for the benefit of non-party Inchcape Shipping Services ("Inchcape"). Indeed, Mr. Juska's affidavit states at paragraph 11, "Deutsche Bank had identified and restrained $157,000 in the form of an electronic fund transfer originated by MARLOG and being remitted to Inchcape Shipping Services as beneficiary." Therefore, Essar acknowledges that Marlog initiated the EFT from its account intended for the benefit of Inchcape. It is undisputed that neither Marlog nor Inchchape are parties hereto. Now, Essar attempts to cure the defects of its attachment by

1

proffering conclusions with respect to "appearances", such as: "I commented to Mr. Nidhiry [Deutsche Bank's attorney] that from the description of the transaction on the Swift confirmation it appeared that the money was being paid by MARLOG on behalf of or for the benefit of MARTRADE in relation to the vessel GRAND GLORY, which in turn appeared to constitute an asset within the description contained in the Process of Maritime Attachment and Garnishment." This is precisely the type of defect-curing that Rules B & E do not permit.

In addition, Exhibit 3 to Mr. Juska's affidavit is a letter from Deutsche Bank which only serves to highlight the wrongfulness of Essar's attachment. The letter specifically cautions that: "Martrade Gulf Logistics was neither the originator nor the beneficiary but the name Martrade Gulf Logistics was mentioned in the remittance information as follows: "Grand Glory V 7807 for Martrade Gulf Logistics"". Based only upon Essar's conclusion that this remittance information appeared to show Marlog's wire transfer was related to Martrade, Essar instructed Deutsche Bank to retain the subject funds in a suspense account. Now after the fact, Essar seeks both Marlog's and the Court's assistance in proving that Marlog's funds transmitted for the benefit of Inchcape is actually an attachable asset of Martrade's.

POINT I

ESSAR MISSTATES ITS BURDEN OF PROOF

Following an attachment under Rule B or an arrest under Rule C, any person with an interest in the property can demand a hearing where the plaintiff must "show why the arrest or attachment should not be vacated or other relief granted consistent with these

2

rules." Fed. R. Civ. P. Supp. R. E(4)(f). At a hearing pursuant to E(4)(f), in order to sustain the attachment, a plaintiff must show that: "(1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the **defendant's property** may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) (emphasis added). A plaintiff must therefore meet all the technical requirements of Rules B & E, failing which "the district court must vacate the attachment." *Id.*

Essar submits that all it need show is that "'reasonable grounds' exist for the attachment,'" citing *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275 (S.D.N.Y. 2006). However, this standard is not germane to the issue before the Court; specifically whether the funds attached belong to non-party Marlog. The standard of *Wajilam Exports* only is only applicable to the purported validity of plaintiff's claims and pleadings. *T&O Shipping Ltd. v. Source Link Co. Ltd.*, 06-cv-7724, 2006 WL 3513638 (S.D.N.Y. 2006) ("where attachment is based upon fraud theory of veil-piercing, plaintiff should not be required to allege fraud with particularity before discovery"). Notably absent from Essar's pre-attachment complaint is any allegations that Marlog was the alter-ego of, or was controlled by Martrade, or that Marlog's EFT belonged to, was controlled by, or was for the benefit of Martrade.

In addition, Essar cannot meet the technical requirement of Rule B which restricts attachments to only those funds and property of **named** defendants. *T&O Shipping*, 2006

3

WL 3513638; *DS Bulk Pte. Ltd. v. Calder Seacarrier Corp.*, 05-cv-10146, 2006 WL 1643110 (S.D.N.Y. 2006). Just as the plaintiff in *T&O Shipping*, Essar "did not aver, as required by Rule V, that [Marlog] could not be 'found within the district.'" 2006 WL 3513638 at *4.

Essar submits that *T&O Shipping* is not controlling because the Deutsche Bank wiring instructions "referenced" defendant Martrade Gulf Logistics, and therefore "Martrade had the necessary proprietary interest in those funds..." Essar Memorandum of Law at 9. According to Essar, it does not need to name Marlog as a defendant or allege that it is the alter-ego or controlled by Martrade. However, Judge Karas, in *T&O Shipping* reasoned that:

> [T]he fact that Source Link may have an 'interest' in the attached funds is largely irrelevant to a motion to vacate; the standard for defending an attachment is more exacting than possession of a mere interest in the attached funds...T&O's argument that Source Link Shipping is a shell corporation that Source Link uses to shield itself from liability, even if it were true, would not justify the attachment of Source Link Shipping's funds, unless it was named in the Verified Complaint. Rule B demands as much.

2006 WL 35163638 at *4.

Marlog submits that it has wrongfully been denied the use of its funds and that the attachment should be vacated; Essar has not and cannot meet its burden under Rules B & E to show why its attachment should be upheld.

4

## POINT II

## ESSAR CITES NO AUTHORITY TO SUPPORT ITS POSITION

Essar relies upon numerous cases which are irrelevant to the present dispute. Specifically, in the following cases there was no dispute that monies or debts were owed by a garnishee **to a named defendant**: *Iran Express Lines v. Sumatrop, AG*, 564 F.2d 648 (4th Cir. 1977) (contingent freights owed to defendant were attachable property of defendant shipowner where there was no question that freights would eventually be earned); *Florida Conference Association of Seventh-Day Adventists v. Kyriakides*, 151 F.Supp.2d 1223 (C.D.Cal. 2001) (upholding attachment of note due and owing to defendant where debt was admitted by garnishee to be due to defendant); *Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 743 F.2d 956 (1st Cir. 1984) (upholding attachment of debt owed by garnishee Puerto Rico Electric Power Authority to defendant, a Missouri corporation); *Oil Transport Co., S.A. v. Hilton Oil Transport*, 1994 WL 757944 (S.D.Tex. 1994) (upholding attachment of arbitration award against garnishee and in favor of defendant).

Similarly, in *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F.Supp.2d 275 (S.D.N.Y. 2006), the court upheld attachment of EFT in the possession of a garnishee bank where the EFT named defendant **as the beneficiary**. Of course, this is in accordance with the leading case on EFT attachments *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir. 2006) ("Under the law of this circuit,

EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction.").

However, none of these cases has any bearing upon the propriety of Essar attaching an EFT initiated by a non-party to and for the benefit of another non-party. Indeed, the only case Essar provides where a court upheld the attachment of funds to from or belonging to a third party, where the third party did not owe a debt to defendant, did so only where the plaintiff alleged alter-ego/piercing the corporate veil in its complaint and initial pleadings, **prior to the order of attachment being issued**. *Linea Naviera De Cabotaje, C.A. v. Mare Caribe De Navegacion, C.A.*, 169 F.Supp.2d 1341 (M.D.Fla. 2001) (upholding attachment of funds in accounts belonging to two non-parties, but where plaintiff alleged in complaint that defendant controlled such accounts and controlled entities named as account holders and where plaintiffs demonstrated that defendant had offered to settle claims by transfer of funds from such accounts, and that defendant had in fact paid past obligations to plaintiff out of those same accounts).

Indeed in *Linea Navera*, a case in which Essar's attorneys were previously involved, the court noted that: "At the time of the initial attachments, 'Linaca provided the Court with evidence that it had received payments on behalf of Mar Caribe from Emprendedora's and Guantas' accounts'" 169 F.Supp.2d at 1357, n. 21 (emphasis added), and, "Linaca's Verified Complaint proffered that Mar Caribe could not be 'found' in the district…and that debts of Mar Caribe to Linaca had previously been paid from Guantas and Emprendedora bank accounts." 169 F.Supp.2d at 1356. Likewise, in

*Wajilam Exports* it was significant to the court that the plaintiff alleged in its complaint "that there exists 'such unity of ownership and interest between [ATL-BVI] and [Via Sistina] that no separation exists between them,' and that ATL-BVI's corporate veil should be pierced and Via Sistina held liable under the charter party." 475 F.Supp.2d at 277.

Thus, a crucial factor is that a plaintiff allege with sufficiency a party's ownership or control of funds prior to obtaining its attachment. This Essar did not do, and cannot demonstrate at this time. This omission is a fatal defect as was held in *T&O Shipping, Ltd. v. Source Link Co., Ltd.*, 2006 WL 3513638 (S.D.N.Y. 2006). In that case, the garnishee bank restrained funds belonging to non-party Source Link Shipping, which was a corporate relation to the named defendant Source Link Co. Ltd. The plaintiff's attorney instructed the bank to retain the funds because "it **appears** that the funds attached do indeed belong to the defendant Source Link". (emphasis added). However, the court vacated the attachment, because "[t]he Verified Complaint, supporting affidavit, and Attachment contained no allegations against Source Link Shipping."

Essar likewise hangs its hat upon "appearances". Juska Aff. ¶12. However, it cannot cure the defect that it did not name Marlog as a defendant in its complaint, allege alter-ego, or allege control of Marlog's accounts by Martrade such that its attachment should be upheld. Under the pertinent case law, and Rule E, Essar utterly fails to carry its burden to show why its attachment should be upheld.

## POINT III

## LIMITED DISCOVERY IS NOT WARRANTED

Neither case cited by Essar in its memorandum supports its argument that it should be allowed limited discovery of the relationship between Martrade and Marlog. In fact, the court in *Maryland Tuna Corp. v. MS Benares*, 429 F.2d 307 (2d Cir. 1970) allowed limited discovery only where the complaint named two related companies as defendants. In addition, *Rolls Royce Industrial Power (India) v. M.V. FRATZIS M*, 1995 WL 314635 (S.D.N.Y. 1995) did not grant plaintiff limited discovery as Essar requests, and there is no indication that it involved the validity of an attachment of non-party's funds.

In *T&O Shipping* the plaintiff, identically situated with Essar, requested limited discovery which the court rejected in the following language "Plaintiff's request for discovery from Source Link Shipping is DENIED. Plaintiff is simply not entitled, under the circumstances here, to compel discovery as a means of justifying it attachment after-the-fact." 06-cv-7724, Docket Entry 15, Endorsed Letter, entered Oct. 15, 2006. Similarly, Essar's request herein to conduct limited discovery should be denied.

## CONCLUSION

For the foregoing reasons, the Court should issue an order directing that the June 1, 2007, and any previous or subsequent attachments of Marlog's property by Plaintiff Essar in this district be immediately vacated, and that plaintiff be enjoined from further attachment of Marlog's property.

Dated: New York, New York
      July 6, 2007

Respectfully Submitted:

HILL RIVKINS & HAYDEN LLP

By: _____
Keith B. Dalen (KD-4997)
45 Broadway – Suite 1500
New York, New York 10006
(212) 669-0600