228-07/WLJ
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
ESSAR INTERNATIONAL LIMITED
80 Pine Street
New York, NY 10005
Telephone:(212) 425-1900
Facsimile:(212) 425-1901
William L. Juska (WJ 0772)
Manuel A. Molina (MM1017)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

ESSAR INTERNATIONAL LIMITED,

                    Plaintiff,

   -against-

MARTRADE GULF LOGISTICS FZCO,

                    Defendant.

------------------------------------------------------------------x

**AFFIDAVIT OF**
**MANUEL A. MOLINA.**

**07 Civ. 3439 (WHP)**

State of New York   )
                  ) ss.:
County of New York )

      MANUEL A. MOLINA, being duly sworn, deposes and says as follows:

      1.     I am an associate with the law firm of Freehill Hogan & Mahar LLP, attorneys for plaintiff Essar International Limited ("ESSAR").

      2.     This Affidavit is submitted in further opposition to the Motion of Marlog-LBG Logistics GmbH ("MARLOG") to vacate a certain attachment of $157,000 restrained by Deutsche Bank pursuant to the Process of Maritime Attachment and Garnishment issued in this action.

3.    Attached hereto as Exhibit A is a copy of an Inchcape Shipping Services Invoice and Payment Order, which document was marked as Court Exhibit 1 at the July 6, 2007 hearing.

4.    Attached hereto as Exhibit B is a copy of a decision of the Hon. Judge Loretta A. Preska in *Losinjka Plovidba v. Azelie Corp.*, No. 06-13627 (S.D.N.Y. Jan 29, 2007).

Manuel A. Molina (MM 1017)

Sworn to before me this
11th day of July, 2007

Notary Public

CLARE HENRY
Notary Public, State of New York
No. 01HE4831488
Qualified in Kings County
Certificate in New York County
Commission Expires October 31, 2009

# EXHIBIT A

to graeme lloyd of winter, london , copy: klaus maassen
from martrade / uwe kornol

re:essar / lindos / arrest usd 157.000

 Inchcape
Shipping Services

enclosed please see payment-order from
mgl-dubai / executed from marlog-account.

bst rgds  uwe kornol  duesseldorf, 8.6.07

### Suez Canal Proforma Tolls

| Name of Vessel | Grand Glory | |
|---|---|---|
| Type | Bulk Carrier | Laden |
| SCNT | 22574.84 | SC ID No: 20903 |

| Tons/Item | Rate in SDR | Total SDR | US$ Rate | Amt in US$ | Remarks |
|---|---|---|---|---|---|
| 5000 | 7.65 | 38250 | 1.53 | | |
| 5000 | 4.5 | 22500 | | | |
| 10000 | 3.4 | 34000 | | | |
| 20000 | 0 | 0 | | | |
| 30000 | 0 | 0 | | | |
| 2574.84 | 1.15 | 2961 | | | |
| Total Tolls | | 97711 | | 149,498 | SCA circular 01/2003 |
| Additional Tolls | | | | 0 | |
| Mooring & Projector | | | | 1,882 | Canal Mooring and Lights Company |
| Maritime Auth Fees | | | | 900 | Decree 332/03 |
| Port Utilisation fees | | | | 250 | US$ 200 / 250 |
| Light dues Port Said | | | | 1,179 | 5 cents per SCNT +USD 50 misc items |
| Light dues Suez | | | | 1,179 | 5 cents per SCNT +USD 50 misc items |
| Port dues | | | | 746 | 3 cents/SCNT +5% of invoice+USD 35 misc items |
| Pilotage | | | | 311 | Port Tariff |
| Seamens Club | | | | 25 | Decree 332/03 |
| Quarantine | | | | 50 | Port Tariff |
| Customs | | | | 20 | Port Tariff |
| Port Police dues | | | | 25 | |
| ISS Agency Fees | | | | 900 | Agency Fee |
| Agency charges | | | | 200 | Lumpsum charge to include all items like |
| | | | | | Garbage, Bank charges, overtime |
| | | | | | etc |
| Total to be remitted | | | US$ | 157165 | |

*Note:  Latest USD/SDR rate can be obtained from www.imf.org*

**Contacts:**
Tel Off: +202 22683852
Fax: +202 22683850
Email:

Operations    iss.egypt@iss-shipping.com
Management    ashok.k@iss-shipping.com

POC and AOH Numbers      Ashok Kumar, Gen Mgr  Mobile: +2012 313 0669  Res: +202 5196698
Nabil:  Ops Mgr            Mobile: +2012 3280372  Res: +202 6070555

**Bankers Full Style for Remittance of funds:**
Commercial International Bank, Port Said Branch, Egypt
Favouring Inchcape Shipping Services, Acc No 0250307451
Under tested telex to Commercial Intenational Bank, Port Said  Tlx No 63196 CNPS UN.
SWIFT CODE:  CIBEEGCX002

Inchcape Port Said - Payment advise

# PAYMENT ORDER

**Payee**                : **Martrade Gulf Logistics FZCO**

**Ammount**              : USD 157,165.00

**Bank of Beneficiary**  : COMMERCIAL INTERNATIONAL BANK, PORT SAID
                           BRANCH, EGYPT
                           F/O INCHCAPE SHIPPING SERVICES
                           PORT SAID
                           SWIFT: CIB EEG CXE 002

**Beneficiary**          : INCHCAPE SHIPPING SERVICES

**Town**                 : PORT SAID

**Country**              : EGYPT

**Account No.**          : 025 030 7451

**Refference**           : MV.GRAND GLORY      Voy        7807
                           PDA SUEZ                     $  157,165.00

**To be paid on**        : 01.06.2007

**Prepared by**          : Krishnan
                           01.06.2007

Page 1 of 1                                            6/1/2007, 6:08 PM

**EXHIBIT B**

71TALOSD.txt

1

71TALOSDps
1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   LOSINJKA PLOVIDBA,
3
4
4              Plaintiff,
5
5              v.                          06 CV 13627 (LAP)
6
6   AZELIE CORPORATION and
7   CARGOBULK PTE LTD.,
7
8              Defendants.
8
9   ------------------------------x
9
10                                         January 29, 2007
10                                         5:40 p.m.
11
11
12  Before:
12
13                   HON. LORETTA A. PRESKA
13
14                                      District Judge
14
15
15                        APPEARANCES
16
16  FREEHILL HOGAN & MAHAR
17       Attorneys for Plaintiff
17  BY:  MICHAEL E. UNGER
18       LAWRENCE J. KAHN
18
19
19  DeORCHIS, WIENER & PARTNERS LLP
20       Attorneys for Defendant Cargobulk
20  BY:  CHRISTOPHER H. MANSUY
21
22
23
24
25

              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

☐                                                           2

71TALOSDps
1         (In open court; discussion held off the record)
2         THE COURT:  Counsel are here today for the second
3   round of argument on an attachment effected in early December.
4   The first question on the table was whether Azelie has a
5   property interest in the attached funds.  It seems pretty clear
6   that Azelie chartered the M/V EBER from Sohtorik.  The
7   agreement between those two parties required that payments made
8   by Azelie be made to Hellas.  By December 5, 2006, Azelie had a
'9  debt to Sohtorik for, among other things, charter hire for the
10  M/V EBER in the amount of some $403,000.  Azelie instructed
11  Cargobulk, or Cargobulk was otherwise obligated by some
12  agreement with Azelie, to pay Hellas the $403,000 in
                          Page 1

71TALOSD.txt
13  satisfaction of Azelie's debt to Sohtorik.  As those funds were
14  transferred, that money transfer was captured pursuant to the
15  order in this action.  The question on the table, as I
16  mentioned, is whether or not Azelie has a property interest in
17  those funds.
18          Here, it's clear first of all that under the rule,
19  property interests attachable have been very broadly defined.
20  It is also clear that in this circuit, electronic funds
21  transfers to or from a party are attachable as they pass
22  through the banks located in the court's jurisdiction.  Here,
23  the undisputed fact that the payment was made on behalf of
24  Azelie by Cargobulk seems to represent a sufficient property
25  interest to be attached within the meaning of the rule and some
               SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                              3
71TALOSDps
1  of the cases from this district, for example, Hamburg Bulk
2  Carriers v. Proteinas y Oleicos, 2005 U.S. Dist. LEXIS 8009
3  (S.D.N.Y., May 4, 2005); Engineering Equipment Co. v. S.S.
4  SELENE, 446 F.Supp. 706 (S.D.N.Y. 1978).  Accordingly, I find
5  that Azelie had a property interest that could properly have
6  been attached in the funds.
7          In addition, counsel argue about whether or not
8  plaintiff has made a prima facie showing sufficient to
9  demonstrate that -- off the record.
10         (Discussion held off the record)
11         THE COURT:  Cargobulk is the alter ego of Azelie.
12  Counsel have cited particularly to Ulisses Shipping Corp. v.
13  FAL Shipping Co. Ltd., 415 F.Supp.2d 318, 322-23 (S.D.N.Y.
14  2006), and there, the Court held that at a post-attachment
15  hearing, a plaintiff asserting corporate alter egos need not
16  definitively establish dominion and control but must present
17  enough evidence to convince the court that there are reasonable
18  grounds for piercing the corporate veil.  In that case, the
19  Court relied on a showing that one entity paid the debts of the
20  other and the two entities had overlapping ownership,
21  management, and purposes.  Here, we have a similar showing as
22  between Azelie and Cargobulk.  Indeed, much of the overlap is
23  admitted in Mr. Wong Kim Sen's declaration.  There is no
24  question here but that the $403,000 payment was attempted by
25  Cargobulk on behalf of Azelie.
               SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

                                                              4
71TALOSDps
1          It also appears from the Walters declaration that
2  Azelie has no actual existence but is a corporate shell and has
3  capitalization of one Singapore dollar, or approximately 65
4  cents.
5          Off the record.
6          (Discussion held off the record)
7          THE COURT:  In addition, Mr. Wong points out in
8  paragraph 12 of his deposition, for example, that Cargobulk as
9  managers and agents of Azelie will make advance payments on
10  behalf of and on instructions from Azelie.  And he goes on to
11  say that Azelie will thereafter repay and reimburse cargo bulk.
12  However, there does not appear to be any evidence of that.
13         Given the undisputed facts of interlocking ownership,
14  common management, and the payment of debts on behalf of
15  Azelie, plaintiff at this point has made a prima facie showing
16  of an alter ego situation sufficient to demonstrate reasonable
17  grounds for piercing the corporate veil.  Accordingly, the
                     Page 2

71TALOSD.txt

18  attachment will be continued.
19          Counsel, would you confer and let me know within the
20  week how you would like to proceed.
21          MR. UNGER:  Will do, your Honor.
22          THE COURT:  Anything else today?
23          MR. MANSUY:  Yes, your Honor.
24          THE COURT:  Yes, sir.
25          MR. MANSUY:  I'm still not clear which way the alter
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                                5

71TALOSDps
1   ego goes.  If Cargobulk is the alter ego of Azelie, then
2   Cargobulk capitalization is irrelevant, I think.
3          THE COURT:  It is Azelie's capitalization that was at
4   65 cents.
5          MR. MANSUY:  Walters was observing something about
6   Cargobulk's capitalization.
7          THE COURT:  All right.  Let me find him.
8          MR. UNGER:  That is correct, your Honor.  Mr. Walters
9   was making that observation on the part of Cargobulk.
10         THE COURT:  Well, let me just say this, counsel.
11  Nevertheless, the material in Mr. Walters' declaration, for
12  example, paragraph 11, all of Azelie's activities appear to be
13  controlled on a day-to-day basis through Cargobulk in Singapore
14  or through others of its offices.  He goes on to give some
15  detail there.  But it does seem to me that there is certainly a
16  prima facie showing of alter ego at this point in time.
17         MR. MANSUY:  Well, there is no suggestion, and indeed
18  the management agreement says, that Cargobulk will manage the
19  affairs of Azelie.  That's not a mystery.  The question is
20  whether that is then enough to say that Cargobulk is
21  responsible for the debts of Azelie, which is what they are
22  alleging.
23         THE COURT:  Yes, sir.  Mr. Walters' detail does seem
24  to provide enough information for a prima facie showing.
25  Obviously that's not a finding at this point.
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                                6

71TALOSDps
1          MR. MANSUY:  OK.  And I believe your Honor also
2   mentioned that there was no evidence of remittance, I think you
3   said there was no evidence of remittance.
4          THE COURT:  Right.  I was referring to Mr. Wong's
5   affidavit, sir.
6          MR. MANSUY:  Right.  There is attached, the fifth page
7   of Exhibit 5, the sixth page of Exhibit 5 is an e-mail
8   reflecting the transfer of a substantial amount of money,
9   reflecting charter payments due on other unrelated vessels.
10         THE COURT:  The fifth or the sixth?  I'm sorry.
11         MR. MANSUY:  It's two pages.  One, the first page, is
12  an e-mail dated December 1, 2006, from Cargobulk to Azelie.
13         THE COURT:  Of Exhibit 5.
14         MR. MANSUY:  Yes, to the Wong affidavit.  The last
15  exhibit is Exhibit 6.  That's two pages.
16         THE COURT:  Yes, sir.
17         MR. MANSUY:  And then the --
18         THE COURT:  The one before it is 5.
19         MR. MANSUY:  Right.  And the last two pages of Exhibit
20  5 reflect the transfer.
21         THE COURT:  Yes, sir.  December 1, 2006.
22         MR. MANSUY:  That's memorializing the transfer from
                            Page 3

71TALOSD.txt
23    Azelie to Cargobulk.  And the details are shown on the
24    following page.
25                THE COURT:  Yes, sir.  I stand corrected.  There is
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    7
      71TALOSDps
1     some indication of reimbursement.
2                Anything else to add?
3                MR. MANSUY:  Just a question, your Honor.  I take it
4     from the decision you've rendered that you consider the
5     argument with regard to the plaintiff's burden of showing some
6     element of fraud as a nonstarter.
7                THE COURT:  I do understand that to be based primarily
8     in the state law and not the federal common law.  However, if
9     we were going to pursue that, it does seem that the course of
10    negotiations set out in Mr. Magas' declaration certainly shows
11    reliance on Cargobulk and Azelie, and their agreements to pay.
12    In particular he discusses the need to move the perishable
13    cargo.  He notes that the individuals confirmed that they were
14    negotiating on behalf of Azelie except for, in his declaration,
15    Mr. Wong says that he's a Cargobulk employee.  It's clear from
16    the course of the negotiations, plaintiff's reliance on both
17    Azelie and Cargobulk for payment, the necessity of having all
18    three parties together to minimize damage, and finally the
19    conclusion in paragraphs 24 and 25.  So to the extent that that
20    additional requirement is necessary, it does seem to have been
21    met at least on a prima facie basis here.
22                Anything else, gents?
23                MR. MANSUY:  I would just like you to note, your
24    Honor, that in paragraph 14, Mr. Magas is actually talking of
25    the three people, as I understand it, the plaintiff, its time
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

                                                                    8
      71TALOSDps
1     charterer, Cross World, and Azelie as Cross World's
2     subcharterer.
3                THE COURT:  13 or 14, sir?
4                MR. MANSUY:  Yes, your Honor.
5                THE COURT:  13 or 14 are you referring to?
6                MR. MANSUY:  I'm sorry.  14.  I believe that that is
7     the triangle that he is speaking of.
8                THE COURT:  Well, certainly Cross World is involved.
9     But at least as represented by Mr. Magas, the authorization was
10    both to Azelie and Cargobulk to pay the amount owed directly to
11    plaintiff.
12                MR. MANSUY:  Well, there's no evidence in any of the
13    exhibits to his declaration of that fact, your Honor.
14                THE COURT:  All right, sir.
15                All right, gentlemen.  I'll look for your letter
16    within the week if you would, please.
17                MR. UNGER:  Yes, your Honor.
18                MR. MANSUY:  Your Honor, one thing.  Mr. Wong is out
19    of Singapore, and I had some difficulty contacting him.  I will
20    try to impress upon everybody in their office to get ahold of
21    him.
22                THE COURT:  If you need more time, tell me.  I know
23    how difficult it is to confer with those folks 12 hours off.
24                Thank you gentlemen.
25                              oOo
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                              Page 4